UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.


SEAN LYNCH,

                    Plaintiff,

          v.

YES MANAGEMENT, LLC; and

YES COMMUNITIES, LLC

                    Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, Sean Lynch, by and through his attorneys, HKM Employment Attorneys, LLP, for his Complaint against YES Management, LLC and YES Communities, LLC (collectively "Defendants" or the "Company") states and alleges as follows:

### PRELIMINARY STATEMENT

1.      This is an employment discrimination case arising from Defendant's failure to accommodate, discrimination towards, and wrongful termination of Plaintiff because Plaintiff suffers from one or more disabilities within the meaning of the Americans with Disabilities Act and/or in retaliation for seeking reasonable accommodations and medical leave under the Americans with Disabilities Act and/or Family and Medical Leave Act.  In early 2019, Mr. Lynch reported to Defendants that he was suffering from symptoms related to a perforated diverticulum, anxiety, and depression, and that he would likely have medical restrictions related to his conditions while he underwent treatment.  In March 2019, Mr. Lynch was hospitalized related to his serious

medical conditions.  While in the hospital, the Defendants asked Mr. Lynch to violate his medical restrictions.  Once he was released from the hospital, the Defendants changed his job description to add additional tasks, specifically listing items Defendants knew that Mr. Lynch was restricted from doing.  In August of 2019, Defendants expressed frustration at Mr. Lynch's restrictions, and in September 2019, the Defendants again asked Mr. Lynch about his medical restrictions. However, they failed to engage in good faith in the interactive process required under the Americans with Disabilities Act.  Shortly after inquiring about Mr. Lynch's restrictions, instead of engaging in the good faith interactive process regarding Mr. Lynch's medical restrictions and requested reasonable accommodations, the Defendants terminated Mr. Lynch.

## PARTIES

2.      Plaintiff is, and at all times relevant to this Complaint was, a resident of Colorado.

3.      Defendant YES Communities, LLC is a Delaware limited liability company authorized to conduct business in Colorado, with a principal office address of 5050 South Syracuse Street, Suite 1200, Denver, Colorado 80237.

4.      Defendant YES Management, LLC ("Management") is a Delaware limited liability company authorized to conduct business in Colorado, with a principal address of 5050 South Syracuse Street, Suite 1200, Denver, Colorado 80237.

5.      Collectively, Defendant YES Communities, LLC ("Communities") and Defendant YES Management, LLC are referred to herein as "Defendants" or the "Company."

6.      Plaintiff worked at Defendants' downtown Denver location, located at 1900 16th Street, 9th Floor, Denver, Colorado 80203.

7.      Defendants are deemed a single employer of Plaintiff by virtue of their centralized

2

control of employment practices, common management, common rules regarding management, interrelations of operations, and common ownership or financial control.  Defendants are therefore jointly and severally liable on all claims asserted in this action.

8.     Upon information and belief, Defendants Management and Communities use the same employee handbook.

9.     Upon information and belief, Defendants Management and Communities use a centralized Human Resources department.

10.    Upon information and belief, Defendants are employers within the meaning of 29 U.S.C. § 2611(4)(A), in that they have more than 50 employees within a 75-mile radius.

11.    Defendants constitute a single employer, as they have (i) common management; (ii) interrelation between operations; (iii) centralized control of labor relations; and (iv) degree of common ownership/financial control.  *See* 29 C.F.R. § 825.104.

12.    Upon information and belief, Communities and Management share a common Employee Handbook.

13.    Upon information and belief, Defendants' employees identified themselves as, and believed they were, employees of Communities.

14.    Defendants are employers within the meaning of 42 U.S.C. § 12111(5)(A), in that they each have 15 or more employees each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

## JURISDICTION AND VENUE

15.    Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

3

16.     This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

17.     This Court has diversity jurisdiction under 28 U.S.C. § 1332, as the Defendants share no states of citizenship with the Plaintiff and the amount in controversy exceeds $75,000.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in this District.

19.     At all times pertinent to the Complaint, Defendants purposefully directed their activities at residents of Colorado.  Likewise, at all times pertinent to the Complaint, Defendants had continuous and systematic affiliations with Colorado.

20.     Because the Defendants' operations are so intertwined as addressed herein, the circumstances in this case justify disregard of the corporate entity.

21.     Using the integrated enterprise test, Defendants' lack of separateness warrants treating the Defendants as a single entity.

22.     At all times pertinent to the Complaint, the corporate business of the Defendants were often so hazily confused that employees of Defendants themselves did not know which was which.  Thus, the legal fiction of separate corporate entities must evaporate.  *See Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358 (10th Cir. 1974).

23.     The choice of forum reasonably and logically relates to the cause of action, as the unlawful employment decisions at issue took place in Colorado.

## **ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED**

24.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

25.     Plaintiff filed his Charges of Discrimination, Numbers 32A-2020-00109 and 32A-2020-00105 with the Equal Employment Opportunity Commission for disability discrimination and retaliation on or about November 8, 2019.  Plaintiff was issued a Notice of Right to Sue with Respect to Charge Numbers 32A-2020-00109 and 32A-2020-00109 pursuant to 42 U.S.C. § 2000e-5(f)(1) on September 2, 2020.  Plaintiff filed the present action within ninety (90) days of receipt of same.

26.     Plaintiff has met all administrative prerequisites prior to filing this action.

## FACTUAL ALLEGATIONS

27.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

28.     Plaintiff began working for Defendants on or around January 29, 2015 as a Lead Generation/Inside Sales Representative.

29.     Plaintiff worked for Defendants as a Lead Generation/Inside Sales Representative from January 2015 until his wrongful termination on or about September 25, 2019.

30.     In or around early 2019, Plaintiff's recurring depression and anxiety symptoms resurfaced.

31.     In or around January or February of 2019, Ms. Pyle and Rebecca Hulse (Professional Development Coach) told Mr. Lynch that they intended to promote him to a national sales training position, which would have been a promotion and required extensive travel.

32.     On or about February 22, 2019, Plaintiff underwent a series of tests to determine the underlying causes of his symptoms.  Ultimately, on or around March 1, 2019, Plaintiff was diagnosed with depression, generalized anxiety disorder, and perforated diverticulum.

33.     In or around February 2019, Plaintiff reported to his supervisor, Jennifer Pyle (National Sales & Finance Director) that he was suffering from symptoms related to depression, generalized anxiety disorder, and a perforated diverticulum, and that he would likely have some medical restrictions (and would likely need work accommodations) related to his medical condition, including likely restrictions related to limiting travel (if any was requested) and public speaking engagements.

34.     On or about February 25, 2019, Plaintiff emailed Ms. Pyle the following:

> On a side note, I visited my 4th doctor in the last 7 months and finally found someone who knew what they were doing.  I don't want to divulge the specifics, but there have definitely been side effects from my high anxiety and stress from this past year.  To get things normal again, the doctor has said to avoid the high-stress situations that have made me sick in the past so I don't make things worse.  That being said, doing presentations and public speaking are not optional for me in the foreseeable future.  Otherwise I may cause permanent internal damages that would make me miss work for an extended period of time.  I would be happy to run the contest, but someone else will have to do the video presentation for the winner since I am unable.

35.     On or about February 25, 2019, Ms. Pyle responded that the Defendants would accommodate Mr. Lynch regarding finding someone else to create a company-wide video announcement.

36.     However, shortly after Ms. Pyle said that she understood his requested reasonable accommodations – of not doing presentations and public speaking – Ms. Pyle again asked him to violate his medical restrictions on or about March 1, 2019.

37.     Beginning on or around March 1, 2019, Mr. Lynch was hospitalized at Swedish Medical Center for symptoms related to anxiety and/or diverticulitis.

38.     Mr. Lynch spoke with Ms. Pyle three times on March 1, 2019: first, to let her know

he might need the day off of work due to a medical condition; then to tell her that he was checking into the Emergency Department; and finally, to let her know that he anticipated undergoing treatment at the hospital for a few days.

39.     On the third phone call with Ms. Pyle on March 1, 2019 – and after Ms. Pyle was aware of Mr. Lynch's medical restrictions requiring him to abstain from public speaking engagements during the early stages of his anxiety treatment – Ms. Pyle asked Mr. Lynch to give a presentation by conference call the following day to Defendants' entire company, of over 1,000 employees.  Ms. Pyle said (paraphrased): "I know you have anxiety, but I need you to do this sales training for everyone in the company."

40.     Mr. Lynch explained to Ms. Pyle that he could not speak at the conference due to disabilities and related medical restrictions.

41.     Instead of offering Mr. Lynch sympathy, Ms. Pyle inappropriately shared information about Mr. Lynch's medical condition with Jim Bramlage (Vice President) and David Whitworth (Vice President).

42.     On or about March 4, 2019, Plaintiff was released from the hospital.

43.     On or about March 21, 2019, the job description for Plaintiff's position was changed.

44.     Upon information and belief, March 21, 2019 was the first time Plaintiff's job description was updated since he began working for the Defendants in or around January 2015.

45.     The updated job description included additional travel and public speaking – both things which Ms. Pyle (who, upon information and belief, was involved in rewriting Mr. Lynch's job description) was well-aware triggered and/or worsened Mr. Lynch's reported anxiety.

7

46.     Prior to learning of Mr. Lynch's disabilities, travel was not a priority for Mr. Lynch's position.  For example, in 2017, Mr. Lynch traveled only once for work; in 2018, Mr. Lynch traveled only once for work; and in 2019, Mr. Lynch did not travel for work.

47.     On or about March 22, 2019, Ms. Pyle issued Mr. Lynch a written warning regarding alleged punctuality and performance issues, stating that Mr. Lynch must make a minimum of 50 phone calls per day or be on the phone for a minimum of 20 hours per week.

48.     Upon information and belief, no employees aside from Mr. Lynch were required to adhere to similar quotas, make a minimum of 50 calls per day, or be on the phone for a minimum of 20 hours per week.

49.     Of note, this quota was put into place less than three weeks after Mr. Lynch was released from the hospital.

50.     On or about March 23, 2019, Mr. Lynch met with Fatosh Ucar (Human Resources Manager for Defendants) to report his concerns that the revised job description and write-up were meant to discriminate and/or retaliate against Mr. Lynch because of his disability, perceived disability, medical restrictions, and/or requested accommodations.

51.     At the meeting, Ms. Ucar instructed Mr. Lynch to have his doctor fill out Americans with Disabilities Act ("ADA") paperwork.

52.     On or about April 22, 2019, Mr. Lynch provided the Defendants with an ADA Medical Inquiry Form filled out by Dr. Jeremy John, one of Mr. Lynch's treating medical providers, stating that Mr. Lynch had the following impairments: perforated diverticulum, abdominal pain, and anxiety.  Dr. John provided requested accommodations related to Mr. Lynch's medical conditions, including to "avoid doing presentations."  At the time, Dr. John noted that he

anticipated Mr. Lynch's conditions would cause restrictions for two months, while they were trying to find the right medications.

53.     From April through August 2019, no further discussions took place regarding Mr. Lynch's medical restrictions and/or reasonable accommodations.

54.     In or around August 2019, Ms. Pyle said to Mr. Lynch: "When are your restrictions going to get lifted?  We really need you to be back on the road."

55.     In or around early September 2019, Ms. Ucar asked Mr. Lynch for an update on his medical condition and restrictions.

56.     On or about September 4, 2019, Dr. John wrote a medical note to the Defendants explaining that Mr. Lynch had continued work restrictions of no traveling or public speaking until further notice.  Dr. John explained that while Mr. Lynch's condition had improved, he was still trying to manage the medical issues.

57.     In September 2019, following receipt of Dr. John's medical note regarding Mr. Lynch, the Defendants engaged in no good faith discussions constituting the requisite interactive process with Mr. Lynch regarding his restrictions or potential reasonable accommodations – for example, Defendants failed to ask when Mr. Lynch anticipated his restrictions would be lifted, and failed to address potential accommodations with Mr. Lynch.

58.     Despite having notice of Mr. Lynch's requested reasonable accommodations, and receiving Mr. Lynch's supporting documentation, the Defendants failed to assess whether a reasonable accommodation would allow Mr. Lynch to continue in his role and Defendants failed to assess whether Mr. Lynch could be transferred to other work which could be done with or without accommodation.

59.     On or about September 25, 2019, Mr. Lynch was terminated.  Mr. Lynch was not offered any alternative positions, despite the Defendants having numerous positions available which would accommodate Mr. Lynch's restrictions and for which he was qualified.

60.     Following Mr. Lynch's termination, the Defendants continued to hire for positions for which Mr. Lynch was qualified and where he was able to perform all job duties despite his restrictions.

      a.     For example, in or around September 2019, Defendants posted a listing for a position as a Sales and Leasing Agent for Prairie Greens in Frederick, Colorado. As of October 15, 2019, the Defendants had not filled this position.  The position was not offered to Mr. Lynch, despite the fact that he was well-qualified for the position.

## FIRST CLAIM FOR RELIEF
**(Disability and/or Perceived Disability Discrimination and Failure to Accommodate in Violation of Section 102(a) and (b)(5)(A) of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12112(a) and (b)(5)(A) Against Defendants)**

61.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

62.     Plaintiff is a disabled person within the meaning of the ADA.

63.     Plaintiff suffers from depression, generalized anxiety disorder, and perforated diverticulum.

64.     Plaintiff was qualified for his job and capable of performing the essential functions of his position with or without a reasonable accommodation.

65.     Plaintiff was regarded as disabled by the Defendants.

66.     Defendants denied Plaintiff the reasonable accommodations of not traveling or

public speaking – instead of engaging in the requisite good faith interactive process, the Defendants repeatedly asked Mr. Lynch to violate his medical restrictions by public speaking. The requested reasonable accommodations of not traveling or public speaking would not have caused Defendants an undue hardship.

67.     Defendants likewise failed to engage in the requisite good faith interactive process with Plaintiff regarding reasonable accommodations under the ADA.

68.     On or about September 25, 2019, Defendants discriminated against Plaintiff because of his disabilities by terminating his employment because of Plaintiff's actual and/or perceived disabilities, in violation of the ADA.

69.     The effect of Defendants' discriminatory practices has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of Plaintiff's disabilities, and/or because of Defendants' denial of Plaintiff's requests for reasonable accommodations based on his disabilities.

70.     Defendants' above-described conduct was intentional.

71.     Defendants' above-described conduct was done with malice or reckless indifference to Plaintiff's federally-protected rights.

72.     As a direct and proximate result of Defendants' above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and he is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

**SECOND CLAIM FOR RELIEF**
**(Retaliation in Violation of the ADA, as amended, 42 U.S.C. § 12203(a) Against**
**Defendants)**

73.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

74.     From February 2019 until he was unlawfully terminated, Plaintiff made requests for reasonable accommodations related to his disabilities and/or perceived disabilities, to allow him to perform the essential functions of his position.  In doing so, Plaintiff was engaging in activity protected under the ADA.

75.     On numerous occasions, as explained above, Plaintiff requested reasonable accommodations related to his disabilities.  In doing so, Plaintiff was engaging in activity protected under the ADA.

76.     Defendants retaliated against Plaintiff after he engaged in the above-described protected activity.

77.     More specifically, Defendants terminated Plaintiff's employment.   These consequences are of the type that would tend to discourage similarly situated employees from requesting accommodations and/or complaining about or opposing illegal discrimination.

78.     A causal connection exists between Plaintiff's protected activities and Defendants' materially adverse actions, i.e. Defendants discharged Plaintiff because he requested and/or required reasonable accommodations related to his disabling medical condition(s).

79.     Defendants' above-described conduct was intentional.

80.     Defendants' above-described conduct was done with malice or with reckless indifference to Plaintiff's federally-protected rights.

81.     As a direct and proximate result of Defendants' above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and he is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

### THIRD CLAIM FOR RELIEF
**(Retaliation in Violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*)**

82.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

83.     Defendants – as a single employer – operate in interstate commerce and have over 50 employees within a 75-mile radius of the location where Plaintiff was employed.  Defendants are therefore "covered employer(s)," as defined as 29 U.S.C. § 2611(4) under the FMLA.

84.     As "covered employer(s)" under the FMLA, Defendants are required to offer any "eligible employee," as defined at 29 U.S.C. § 2611(2), up to 12 weeks of leave from work.

85.     Defendants constitute "employers" under the FMLA as the term "employer" includes "any person who acts, directly or indirectly, in the interest of the employer to any of the employees of such employer."  29 U.S.C. § 2611(4)(A)(ii)(1).

86.     The FMLA's purpose is to address the problem of "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods."  29 U.S.C. § 2601(a)(4).

87.     Plaintiff availed himself of a protected right under the FMLA by taking FMLA leave for a serious health condition on March 1, 2019.

88.     Defendants took actions that a reasonable employee would have found to be

materially adverse when, shortly after Plaintiff returned from taking FMLA leave, Defendants changed Plaintiff's job duties to include duties that Defendants knew would exacerbate the symptoms of Mr. Lynch's serious medical conditions, and then subsequently terminated Mr. Lynch.

89.     Defendants' violations of the FMLA were willful and without justification.

90.     Defendants' above-described conduct and violations of the FMLA were done with malice and oppression and with a conscious disregard for Plaintiff's rights under the FMLA.

91.     Plaintiff is entitled to damages equal to his lost wages, salary, employment benefits and other compensation denied or lost, liquidated damages as provided under the FMLA, costs, attorneys' fees, interest, and equitable relief as deemed appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendants and order the following relief as allowed by law:

A.     Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, garden-variety emotional distress, pain, inconvenience, mental anguish, and loss of enjoyment of life;

B.     Liquidated damages under the FMLA;

C.     Punitive damages as allowed by law;

D.     Attorneys' fees and costs of this action;

E.     Pre-judgment and post-judgment interest at the highest lawful rate; and

F.     Such further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff requests a trial by jury on all issues so triable.


Respectfully submitted this 24th day of September 2020.

**HKM EMPLOYMENT ATTORNEYS LLP**


By: *_/s/ Jesse K. Fishman_*
Claire E. Hunter
Jesse K. Fishman
HKM Employment Attorneys LLP
730 17th Street, Suite 750
Denver, Colorado 80202
chunter@hkm.com
jfishman@hkm.com
*Attorneys for Plaintiff Sean Lynch*